18-3376
United States ex rel. Don Hanks v. Florida Cancer Specialists et al.

# United States Court of Appeals
## for the Second Circuit

---

AUGUST TERM 2019
No. 18-3376

UNITED STATES OF AMERICA EX REL. DON HANKS,
Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, REAL PARTY IN INTEREST,
Intervenor-Appellee,

FLORIDA CANCER SPECIALISTS, GULFCOAST ONCOLOGY ASSOCIATES, INTEGRATED COMMUNITY ONCOLOGY NETWORK, LLC, UNITED STATES ONCOLOGY SPECIALTY, LP, HEMATOLOGY AND ONCOLOGY ASSOCIATES OF THE TREASURE COAST, MID-FLORIDA HEMATOLOGY AND ONCOLOGY CENTERS, PASCO HERNANDO ONCOLOGY ASSOCIATES, P.A., CANCER INSTITUTE OF FLORIDA, P.A., COASTAL ONCOLOGY PL, STUART ONCOLOGY ASSOCIATES, P.A., AYUB SOKOI, MATZKOWITZ, AND SENNABAUM, DAVID DRESDNER, M.D., GEORGIA CANCER SPECIALISTS, NORTHWEST GEORGIA ONCOLOGY CENTERS, PC, AUGUSTA ONCOLOGY ASSOCIATES, CENTRAL GEORGIA CANCER CARE, SOUTHEAST GEORGIA HEMATOLOGY ONCOLOGY ASSOCIATES, P.C.,
Defendants-Appellees. *

ARGUED: FEBRUARY 3, 2020
DECIDED: JUNE 3, 2020

--------------
*The Clerk of Court is respectfully requested to amend the official caption as set forth above.

Before:    JACOBS, SULLIVAN, <u>Circuit Judges</u>, and FURMAN, <u>District Judge</u>.[1]

Relator Don Hanks appeals the dismissal by the United States District Court for the Eastern District of New York (Johnson, <u>J.</u>) of his Fifth Amended Complaint, which asserts claims under the False Claims Act and related state laws against (among others) certain healthcare providers, physician oncology practices, and group purchasing organizations.   Defendants-Appellees urge dismissal of this appeal on the ground that, since the United States had ceased to be a party to the action when the appeal was taken, the notice of appeal is untimely under Federal Rule of Appellate Procedure 4(a)(1).   We hold that Hanks' appeal was timely, but do not reach the merits of Hanks' appeal. Instead, we vacate and remand for the district court to determine whether the False Claims Act's public disclosure bar applies to Hanks' claims--a jurisdictional question the district court elided when it dismissed Hanks' complaint on other grounds.

_____

[1] Judge Jesse M. Furman, District Judge for the United States District Court for the Southern District of New York, sitting by designation.

2

ROB HENNIG, Hennig Ruiz & Singh, P.C., Los Angeles, CA, for Plaintiff-Appellant United States of America ex rel. Don Hanks.

JULIE CIAMPORCERO AVETTA, (Bruce R. Ellisen, on the brief) for Richard E. Zuckerman, Principal Deputy Assistant Attorney General, Department of Justice, Washington, DC, Richard P. Donaghue, United States Attorney for the Eastern District of New York, of counsel, for Appellee United States of America.

LAWRENCE M. KRAUSS, Foley & Lardner LLP, Boston, MA, (Rachel Kramer, Michael P. Matthews, on the brief) for Defendants-Appellees Florida Cancer Specialists & Research Institute, LLC, Ayub, Sokol, Matzkowitz and Sennabaum, M.D.s, P.A. d/b/a New Hope Cancer Center, Coastal Oncology, P.L., J. Paonessa, M.D., P.A. (Gulfcoast Oncology Associates), and Pasco Hernando Oncology Associates, P.A.

JOSEPH R. PALMORE, Morrison & Foerster LLP, Washington, DC, (Samuel B. Goldstein, Joshua Hill, Jr., Lena H. Hughes, on the brief) for Defendant-Appellee U.S. Oncology Specialty, LP.

JEREMY P. BURNETTE, Akerman LLP, Atlanta, GA, for Defendants-Appellees Central Georgia Cancer Care, P.C., Georgia Cancer Specialists I, P.C., and Southeast Georgia Hematology Oncology Associates, P.C.

JAMES W. BOSWELL, III, King & Spalding LLP, Atlanta, GA, (Michael E. Paulhus, Jennifer S. Lewin, on the brief) for Defendant-Appellee Northwest Georgia Oncology Centers, P.C.

DENNIS JACOBS, Circuit Judge:

Relator Don Hanks brings this qui tam action asserting claims on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729 et seq. (the "FCA"), and on behalf of certain states under state law analogs. Appeal is taken from the dismissal of the Fifth Amended Complaint, which (like the earlier complaints) alleges that certain healthcare providers, physician oncology practices, and group purchasing organizations (collectively, "Defendants-Appellees"[2]), and others, conspired with pharmaceutical company Amgen, Inc. ("Amgen") to purchase Amgen drugs at discounted rates with knowledge that Amgen would fail to report the discounts to government agencies. It is alleged that these unreported discounts resulted in: (1) increased sales of Amgen products; and (2) inflated reimbursements to healthcare providers who prescribed--and in some cases over-prescribed--those products.

---

[2] Defendants-Appellees include the following parties: Florida Cancer Specialists, Gulfcoast Oncology Associates, Integrated Community Oncology Network, LLC, United States Oncology Specialty, LP, Hematology and Oncology Associates of the Treasure Coast, Mid-Florida Hematology and Oncology Centers, Pasco Hernando Oncology Associates, P.A., Cancer Institute of Florida, P.A., Coastal Oncology PL, Stuart Oncology Associates, P.A., Ayub Sokoi, Matzkowitz, and Sennabaum, David Dresdner, M.D., Georgia Cancer Specialists, Northwest Georgia Oncology Centers, PC, Augusta Oncology Associates, Central Georgia Cancer Care, and Southeast Georgia Hematology Oncology Associates, P.C.

The United States District Court for the Eastern District of New York (Johnson, J.) dismissed the claims, without prejudice, under the FCA's first-to-file rule, 31 U.S.C. § 3730(b)(5), on the ground that the core allegations had been raised in earlier lawsuits by other plaintiffs. In the alternative, the district court held that the claims were barred by Federal Rule of Civil Procedure 9(b) for failure to allege fraud with sufficient particularity. But in reaching its decision the district court elided the issue of whether the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4), deprived the court of jurisdiction. Because federal courts are not generally permitted to assume the existence of subject-matter jurisdiction, we vacate and remand for the district court to determine whether the public disclosure bar applies to Hanks' claims. The other issues in the case will abide a further appeal in the event the district court has jurisdiction to decide them.

But we must first establish the existence of appellate jurisdiction, which Defendants-Appellees contest on the basis that Hanks' notice of appeal was untimely. See Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 415 (2d Cir. 2004) (holding that filing of a timely notice of appeal is "mandatory and jurisdictional" (internal quotation marks omitted)). We conclude in Point I that appellate jurisdiction exists.

5

Hanks filed a notice of appeal on November 7, 2018, 51 days after the district court entered judgment on September 18 . While parties ordinarily have 30 days from the entry of judgment to file a notice of appeal, Federal Rule of Appellate Procedure 4(a)(1)(B) requires that notice be filed within 60 days "if one of the parties is . . . the United States." In December 2012, the United States intervened with respect to Hanks' claims against Amgen, and it orchestrated the settlement of those claims, which were formally dismissed by a so-ordered stipulation on November 21, 2013. The United States has never formally withdrawn as a party, and has continued to monitor the case, as reflected in its efforts to protect an alleged tax-related interest in a setoff of funds owed to Hanks under the government's settlement with Amgen.

The motion to dismiss emphasizes that the United States intervened in this case for a limited purpose that was accomplished by the Amgen settlement; it later declined to intervene after the filing of a third amended complaint; and it took no further position through the subsequent iterations, including the Fifth Amended Complaint from which this appeal is taken. Relying on United States ex rel. Eisenstein v. City of New York, Defendants-Appellees argue that

monitoring--which the government may do for every qui tam action--is insufficient to make the United States a party. See 556 U.S. 928, 935-36 (2009) (holding that the government's statutory entitlement to receive pleadings and deposition transcripts in FCA cases in which it does not intervene does not confer party status on the United States).

The Federal Rules of Appellate Procedure do not define "party," but the motion to dismiss is defeated by precedent and the plain wording of the rule. "The stated criterion [for the 60-day deadline] is whether the United States is a party to the action . . . and not whether the United States is concerned with the particular order sought to be appealed . . . ." United States v. Am. Soc'y of Composer, Authors and Publishers ("ASCAP"), 331 F.2d 117, 119 (2d Cir. 1964) (citing the former Fed. R. Civ. P. 73(a), the predecessor to Rule 4(a)(1)(B)). See Cohen v. Empire Blue Cross & Blue Shield, 176 F.3d 35, 40 (2d Cir. 1999) (noting similarly). ASCAP deemed it "undesirable to read into a procedural statute or rule, fixing the time within which action may be taken, a hidden exception or qualification that will result in the rights of clients being sacrificed when capable counsel have reasonably relied on the language." Id. Accordingly, we have stated--albeit arguably in dicta--that "the 60–day deadline is applicable if the

United States was a party to the action *at any stage of the litigation*." Cohen, 176

F.3d at 40 (emphasis added).

Here, in the qui tam context, we decline to read into Rule 4(a)(1)(B) a trap

that snaps when the United States: (1) has formally intervened in the matter; (2)

has not formally withdrawn as a party; and (3) has continued to participate in

proceedings before the district court, by monitoring or otherwise. In United

States ex rel. Eisenstein v. City of New York, we held that the United States is not

a "party" for purposes of Rule 4(a)(1)(B) in a qui tam action in which it never

intervened. 540 F.3d 94, 101 (2d Cir. 2008), aff'd sub nom. United States ex rel.

Eisenstein v. City of New York, New York, 556 U.S. 928 (2009). In such

circumstances, we reasoned, "[a]ll parties [are] aware the government [has]

disclaimed any participation in the suit." Id. (quoting United States ex rel.

Petrofsky v. Van Cott, Bagley, Cornwall, McCarthy, 588 F.2d 1327, 1329 (10th Cir.

1978)). By the same token, the parties here are aware that the government

intervened and did not withdraw.

Intervention without withdrawal enables the government to continue

active participation in the ongoing proceedings. Thus here, after the filing of

the Fifth Amended Complaint and the government's decision to decline

8

intervention, the government participated actively: it moved the court to permit setoff of funds owed to Hanks pursuant to the government's settlement with Amgen, in order to satisfy certain outstanding federal tax liabilities (the "Setoff Motion").   Moreover, although the United States need not have "ha[ve] an interest in the appeal" to qualify as a party for purposes of Rule 4(a)(1)(B), Cohen, 176 F.3d at 40, the United States has actively participated in this appeal, urging a partial remand for the district court to address the Setoff Motion, which had yet to be resolved when the district court dismissed the action.

Defendants-Appellees focus on the government's decision not to intervene with respect to the Fifth Amended Complaint, and cite the principle that "[t]he Court cannot . . . designat[e] the United states a 'party' even after it has declined to assume the rights and burdens attendant to full party status."   Eisenstein, 556 U.S. at 934.   But, as the Ninth Circuit observed, the Supreme Court in Eisenstein "did not call for a claim-by-claim analysis, or otherwise indicate that party-status is contingent on anything other than whether [the government] 'intervenes in accordance with the procedures established by federal law.'"   United States ex rel. Bennett v. Biotronik, Inc., 876 F.3d 1011, 1020 (9th Cir. 2017) (quoting Eisenstein, 556 U.S. at 933).   Accordingly, under the circumstances of this case,

9

we hold that the United States was a "party" for purposes of Rule 4(a)(1)(B) and that the notice of appeal was therefore timely.

## II

We do not review the grounds stated for dismissal of this suit by the district court because we conclude that jurisdiction in the district court has not been settled.   See, e.g., U.S. ex rel. Kirk v. Schindler Elevator Corp., 601 F.3d 94, 102 (2d Cir. 2010) ("[T]he first question for an appellate court ordinarily is that of its jurisdiction and the jurisdiction of the lower court in the cause under review."), rev'd on other grounds, 563 U.S. 401 (2011); see also United States ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Medical Response, Inc., 865 F.3d 71, 79 (2d Cir. 2017) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also [of] that of the lower courts in a cause under review." (citation omitted)).   While the FCA's public disclosure bar has since been amended, the version applicable to Hanks' action, filed in 2008, is explicitly jurisdictional:

> No court shall have jurisdiction over an action under [the FCA] based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is

10

> brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (1994).

In the district court, several defendants brought a factual challenge to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), proffering evidence that the core allegations underlying Hanks' lawsuit had previously been publicly disclosed in related lawsuits and media reports. As the district court stated, this imposed on Hanks the burden to show by a preponderance of the evidence that the FCA's public disclosure bar did not deprive the district court of jurisdiction. United States ex rel. Hanks v. U.S. Oncology Speciality, LLP, 336 F. Supp. 3d 90, 109 (E.D.N.Y. 2018) (citing Mantena v. Johnson, 809 F.3d 721, 727 (2d Cir. 2015)). Finding that Hanks' suit was based in substantial part on allegations or transactions that were publicly disclosed, id. at 112, the district court moved on to consider whether Hanks was an "original source" of the information underlying his claims. 31 U.S.C. § 3730(e)(4)(A) (1994). But the district court stopped short of deciding the "original source" question, explaining that, because the complaint "lumps all of the FCA claims together in a single cause of action" and fails to plead the distinct claims with

11

sufficient particularity, the court "c[ould] [not] adjudicate the jurisdictional argument at this juncture."   Hanks, 336 F. Supp. 3d at 113.

It is hard to fault the district court's critique of the pleading.   Still, it remains a "fundamental precept" that "federal courts are courts of limited jurisdiction" and "[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."   Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).   "Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject-matter before it considers the merits of a case."   Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) (citing Steel Co. v. Citizens for a Better Env't., 523 U.S. 83 (1998)).   "For a court to pronounce upon [the merits] when it has no jurisdiction to do so is . . . for a court to act ultra vires."   Steel Co., 523 U.S. at 101–102.

It is "hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."   Ruhrgas, 526 U.S. at 585.   There are a few recognized exceptions to the otherwise "solid rule" that subject-matter jurisdiction must be decided first.   Id. at 577.   Ruhrgas held that, when a case is removed from state court to federal court, a district court may choose to dismiss the case for lack of personal jurisdiction without first resolving a "difficult and

12

novel" challenge to the court's subject-matter jurisdiction. Id. at 588. Nor do district courts "overstep Article III limits when they decline jurisdiction of state-law claims on discretionary grounds without determining whether those claims fall within their pendent jurisdiction . . . or abstain under Younger v. Harris, 401 U.S. 37 (1971), without deciding whether the parties present a case or controversy." Id. at 585 (citations omitted). Similarly, a district court may dismiss on forum non conveniens without first deciding subject-matter jurisdiction. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007). Sinochem reasoned that "[t]he critical point . . . rendering a forum non conveniens determination a threshold, nonmerits issue in the relevant context, is simply this: Resolving a *forum non conveniens* motion does not entail any assumption by the court of substantive 'law-declaring power.'" Id. at 433 (quoting Ruhrgas, 526 U.S. at 584).

Defendants-Appellees urge that the FCA's first-to-file rule is another "threshold, nonmerits issue," and that the district court therefore had power to decide it without first deciding the jurisdictional question raised under the FCA's public disclosure bar. However, that argument is foreclosed by Second Circuit precedent: the first-to-file rule "is not jurisdictional *and instead bears on the merits of*

13

*whether a plaintiff has stated a claim*." United States ex rel. Hayes v. Allstate Ins. Co., 853 F.3d 80, 85 (2d Cir. 2017) (emphasis added).

A federal court may assume jurisdiction "where the jurisdictional constraints are imposed by statute, not the Constitution, and where the jurisdictional issues are complex and the substance of the claim is . . . plainly without merit." Ivanishvili v. U.S. Dep't of Justice, 433 F.3d 332, 338 n.2 (2d Cir. 2006). But here, the jurisdictional question is relatively straightforward: whether Hanks was an original source of the information underlying his claims. If, as the district court suggested, Hanks' allegations have failed to show that he is an original source with respect to any particular claim, that may settle the matter: it is Hanks' burden to establish subject-matter jurisdiction over his claims by a preponderance of the evidence. However, we leave it to the district court to make that determination in the first instance.

Accordingly, we VACATE the judgment of the district court dismissing Hanks' claims, and REMAND for the district court to consider the jurisdictional question under the FCA's public disclosure bar and the government's Setoff Motion.