**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1418**

---

UNITED STATES EX REL. GANESA ROSALES; NORTH CAROLINA EX REL. GANESA ROSALES,

    Plaintiffs - Appellants,

v.

AMEDISYS NORTH CAROLINA, L.L.C., a North Carolina limited liability company; SANJAY BATISH, M.D.; BATISH MEDICAL SERVICE, PLLC,

    Defendants - Appellees.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Dever III, District Judge.  (7:20−cv−00090−D)

---

Argued:  December 10, 2024                        Decided:  February 14, 2025

---

Before KING, WYNN, and THACKER, Circuit Judges.

---

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge King and Judge Thacker concurred.

---

**ARGUED:**  John J. Beins, BEINS GOLDBERG, LLP, Chevy Chase, Maryland, for Appellants.  Brian Kenneth French, NIXON PEABODY, LLP, Boston, Massachusetts, for Appellees.  **ON BRIEF:**  Samuel Ranchor Harris, III, RANCHOR HARRIS LAW, PLLC, Wake Forest, North Carolina, for Appellants.  Brian T. Kelly, NIXON PEABODY LLP, Boston, Massachusetts, for Appellees.

WYNN, Circuit Judge:

The False Claims Act's first-to-file rule allows only one relator at a time to pursue a False Claims Act claim related to a given fraud. Here, the district court dismissed the case of Plaintiff-Relator, Ganesa Rosales, against Amedisys North Carolina, LLC, and two other defendants, because another relator beat her to the punch by five years.

But Rosales argues that her claims were distinct from those in the earlier-filed complaint. She contends, in part, that the district court erred by refusing to consider new claims she asserted in an amended complaint. Although we conclude that the district court should have considered her amended complaint, we nevertheless affirm.

I.

Amedisys Holding, LLC, and its various subsidiaries provide hospice care, including for Medicare and Medicaid patients. Hospice care is, by definition, end-of-life, palliative care.

In October 2014, nurse Jackie Byers began working for Amedisys Holding's South Carolina subsidiary and noticed what she later alleged were "fraudulent practices"— namely, that Amedisys Holding was admitting and recertifying patients "for hospice care who [did] not meet hospice requirements." J.A. 12.[1] Months later, on August 14, 2015, Byers filed a qui tam complaint on behalf of the United States in the District of South Carolina against Amedisys Holding and its South Carolina subsidiaries ("Original Byers Complaint"). Complaint, *United States ex rel. Byers v. Amedisys Holding LLC*, No. 6:15-

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

cv-03228 (D.S.C. Aug. 14, 2015), ECF No. 1 (sealed; available at J.A. 11–26). She brought federal and state claims, including two claims under the False Claims Act, 31 U.S.C. § 3729. As is normal in False Claims Act suits, she filed the complaint under seal to give the government time to determine whether to intervene. *See* 31 U.S.C. § 3730(b)(2).

The government moved for numerous extensions while it considered Byers's complaint alongside three similar complaints filed against Amedisys Holding entities in 2016 and 2017 by relators Cathy McGee and Angela Monroe in the Southern District of West Virginia; relator Ellyn Ward in the Eastern District of New York; and relators Diane Casho and Reba Brandon in the District of Maryland. *United States ex rel. Byers v. Amedisys SC LLC*, No. 7:21-cv-03109-DCC, 2022 WL 4237076, at *1 & n.3 (D.S.C. Sept. 14, 2022); *see* Complaint, *United States ex rel. McGee & Monroe v. Amedisys, Inc.*, No. 2:16-cv-0367 (S.D. W. Va. Jan. 15, 2016), ECF No. 1 (sealed); Complaint, *United States ex rel. Ward v. Amedisys, Inc.*, No. 1:16-cv-5741 (E.D.N.Y. Oct. 14, 2016), ECF No. 1 (sealed); Complaint, *United States ex rel. Casho & Brandon v. Amedisys Inc.*, No. 1:17-cv-01885 (D. Md. July 7, 2017), ECF No. 1 (sealed).[2]

In April 2019, these six relators "consented to the Government's request to consolidate and transfer the[ir] cases to the . . . District of Massachusetts." *Byers*, 2022 WL 4237076, at *1. The case remained under seal at that time. *See United States ex rel. Casho & Brandon v. Amedisys Inc.*, No. 1:19-cv-11147 (D. Mass.) (sealed).

---

[2] While the original West Virginia and New York complaints remain under seal, their complaints are available publicly in the since-unsealed District of South Carolina litigation. *See* Motion to Unseal at 24, 71, 73, *Byers*, No. 7:21-cv-03109 (D.S.C. Oct. 4, 2021), ECF No. 85.

3

Meanwhile in this matter, on June 1, 2020, Rosales filed her own False Claims Act complaint under seal ("Original Rosales Complaint"). Acting on behalf of the United States and North Carolina, she sued Amedisys Holding and several of its subsidiaries, including Appellee Amedisys North Carolina, LLC ("Amedisys NC"). Rosales alleged that she "was a home hospice case manager" for Amedisys NC from November 2017 to March 2019 and that in that role she had seen Amedisys Holding and its subsidiaries (including Amedisys NC) engage in fraudulent behavior, including "unlawfully bill[ing] Medicare and Medicaid through the admission of unqualified and ineligible patients for hospice care, who are not terminal." J.A. 29, 35. She brought three claims under the federal False Claims Act and one under the North Carolina equivalent.

On February 16, 2021, the government filed a notice declining to intervene in the consolidated Massachusetts case. *Byers*, 2022 WL 4237076, at *1. "Subsequently," Maryland relators Casho and Brandon "voluntarily dismissed their case with prejudice." Response in Opposition to Amended Motion to Dismiss at 2, *Byers*, No. 7:21-cv-03109 (Mar. 28, 2022), ECF No. 121. With Byers, McGee, Monroe, and Ward still acting as relators, the case returned to the District of South Carolina—where Byers had initially filed suit—and was unsealed on October 6, 2021.

On October 15, 2021, Rosales filed an amended complaint ("Amended Rosales Complaint"), adding as defendants Appellees Dr. Sanjay Batish and his practice, Batish Medical Service, PLLC. Rosales reiterated the four claims from the Original Rosales Complaint and added a fifth False Claims Act claim pursuant to the Anti-Kickback Statute.

On October 26, 2021, Byers, McGee, Monroe, and Ward filed a joint amended

4

complaint in the District of South Carolina against Amedisys Holding, its South Carolina subsidiary, and Amedisys Hospice LLC. Amended Complaint, *Byers*, No. 7:21-cv-03109 (Oct. 26, 2021), ECF No. 90 (available at J.A. 113–75). They brought five False Claims Act claims, including one referencing the Anti-Kickback Statute.

On September 14, 2022, the *Byers* district court granted in part and denied in part the defendants' motion to dismiss. *Byers*, 2022 WL 4237076, at *1. The court noted that McGee's claims were barred by a release in a settlement agreement. *Id.* at *3. And it concluded that it was required to dismiss Monroe and Ward's claims without prejudice under the False Claim Act's first-to-file rule because Byers had filed a complaint "based on the same material elements of fraud" before they did.[3] *Id.* at *4. The court also dismissed one of Byers's claims but otherwise denied the motion to dismiss Byers's complaint. *Id.* at *4–6. Byers's case remains pending in the District of South Carolina.

Regarding the matter before us, on May 24, 2023, the United States and North Carolina filed a notice in Rosales's case declining to intervene. The district court then partially unsealed this case. The three Appellees (Amedisys NC, Dr. Batish, and his practice) moved to dismiss, after which Rosales voluntarily dismissed all other defendants. In April 2024, the district court dismissed Rosales's federal claims against the three Appellees without prejudice for lack of jurisdiction pursuant to the first-to-file rule—because of Byers's earlier-filed action—and declined to exercise supplemental jurisdiction

---

[3] This Court has held that the False Claims Act "does not make an exception to the first-to-file rule for consolidated complaints." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 (4th Cir. 2017).

5

over her state-law claim. *United States ex rel. Rosales v. Amedisys, Inc.*, No. 7:20-CV-90, 2024 WL 1559284, at *6–7 (E.D.N.C. Apr. 10, 2024). Rosales timely appealed.

II.

This Court "reviews a dismissal for lack of subject matter jurisdiction and questions of statutory interpretation de novo." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 302 (4th Cir. 2017). On appeal from a motion to dismiss, "we may consider . . . 'matters of which a court may take judicial notice,'" *Just Puppies, Inc. v. Brown*, 123 F.4th 652 (4th Cir. 2024) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)), including public records like complaints, *see Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The False Claims Act provides that "[w]hen a person brings" a qui tam action under the statute, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). This means that "an earlier suit bars a later suit while the earlier suit remains undecided." *Kellogg Brown & Root Servs. v. United States ex rel. Carter*, 575 U.S. 650, 662 (2015).

"The purpose of this restriction, known as the first-to-file rule, 'is to provide incentives to relators to promptly alert the government to the essential facts of a fraudulent scheme,' while also keeping in mind the [False Claims Act]'s goal of maintaining the 'balance between encouraging citizens to report fraud and stifling parasitic lawsuits.'" *Carson*, 851 F.3d at 302 (citations omitted) (first quoting *United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111, 117 (1st Cir. 2014); and then quoting *United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999)). The rule applies,

6

however, even where (as here) there is no indication that the subsequent lawsuit was *intentionally* parasitic because, at the time it was filed, the earlier lawsuit(s) remained under seal. *Cf. United States ex rel. LaCorte v. SmithKline Beecham Clinical Lab'ys, Inc.*, 149 F.3d 227, 234 & n.5 (3d Cir. 1998) (explaining potential perverse incentives that would arise with a contrary rule). Indeed, "[t]he first-to-file rule is 'an absolute, unambiguous exception-free rule.'" *Carson*, 851 F.3d at 305 (quoting *United States ex rel. Carter v. Halliburton Co.* (*Carter I*), 710 F.3d 171, 181 (4th Cir. 2013), *rev'd in part on other grounds sub nom. Kellogg Brown & Root*, 575 U.S. 650).

This "Court applies the 'material elements test' in determining whether a later-filed complaint is based on the facts underlying a previously-filed complaint. The material elements tests bars a later suit 'if it is based upon the same material elements of fraud as the earlier suit, even though the subsequent suit may incorporate somewhat different details.'" *Id.* at 302 (citation omitted) (quoting *Carter I*, 710 F.3d at 182). Accordingly, "[t]he later complaint 'need not rest on precisely the same facts as a previous claim to run afoul of this statutory bar.'" *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009) (quoting *LaCorte*, 149 F.3d at 232), *abrogated on other grounds by United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813 (6th Cir. 2021).

## III.

In this appeal, Rosales seeks to overturn the district court's order dismissing her claims against Amedisys NC, Dr. Batish, and his practice. She argues that she was the first relator to bring claims against each of those defendants, as well as the first to bring a claim based on the Anti-Kickback Statute.

7

To address Rosales's arguments, the first question we must consider is which of Rosales's complaints we review when applying the first-to-file rule. The district court concluded that it was restricted to reviewing the Original Rosales Complaint. *Rosales*, 2024 WL 1559284, at *3–4. If that is correct, it resolves much of this appeal, as Rosales did not name Dr. Batish or his practice as defendants, or bring a claim related to the Anti-Kickback Statute, until she filed the Amended Rosales Complaint. But the district court erred on this point because the False Claims Act's first-to-file rule must be applied claim-by-claim and defendant-by-defendant, and this analysis should look to the most recent properly filed complaint.[4]

To begin, the False Claims Act's first-to-file rule states that, "[w]hen a person brings an action" under the statute's qui tam provisions, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). Because the statute uses the word "action," rather than "claim," it could plausibly be read to mean that a complaint raising several False Claims Act claims is entirely barred if even *one* of its claims overlaps with a pending action.

But the circuit courts have not read the statute in that way. Instead, they have noted that its reference to an "action" "may reasonably be read to mean 'claim' because the statute envisions a single-claim complaint." *United States ex rel. Schumann v. Astrazeneca Pharms.*, 769 F.3d 837, 846 (3d Cir. 2014) (citing *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101–02 (3d Cir. 2000) (Alito, J.)). For that reason,

---

[4] We say "properly filed" because, of course, any amendments are subject to the normal rules for amending complaints.

8

every Circuit to address the issue has held that the first-to-file analysis is conducted *claim-by-claim*, with "courts consider[ing] each claim individually" and "separating genuinely new claims from recycled ones." *United States ex rel. Conyers v. Conyers*, 108 F.4th 351, 358 n.8 (5th Cir. 2024), *petition for cert. filed*, No. 24-705 (U.S. Jan. 2, 2025); *accord United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 159–160 (1st Cir. 2022); *United States v. Millenium Lab'ys, Inc.*, 923 F.3d 240, 253 (1st Cir. 2019); *Merena*, 205 F.3d at 102; *see also United States ex rel. Branch Consultants v. Allstate Ins.*, 560 F.3d 371, 378–80 (5th Cir. 2009) (analyzing claims against each defendant individually). The Supreme Court has held the same in the related context of the False Claims Act's public-disclosure bar. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007), *abrogated in part on other grounds by Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025); *accord United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 45 (4th Cir. 2016).

We see no reason why this claim-by-claim analysis should be treated differently just because a complaint has been amended. Nothing in the statute expressly precludes amendment. And if a relator files a complaint asserting Claim A, then files an amended complaint asserting Claims A and B, the fact that the court later concludes that Claim A is barred by the first-to-file rule does not necessarily tell us anything about whether Claim B ought also to be barred. It will need to be evaluated on its own merit, in the same way that it would have been had it been included in the original complaint.

Other circuits appear to agree. In *United States ex rel. Branch Consultants v. Allstate Insurance Co.*, the Fifth Circuit concluded that its "focus [was] on the allegations in [the

9

relator]'s first amended complaint because 'when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.'" *Branch Consultants*, 560 F.3d at 375 n.5 (quoting *Rockwell Int'l Corp.*, 549 U.S. at 473–74). The Sixth Circuit has similarly looked to the allegations of an amended complaint—specifically, new defendants added in a third amended complaint— in applying the first-to-file rule. *See Poteet*, 552 F.3d at 509, 517. When the First Circuit was faced with a situation where a second relator filed a complaint before the initial relator filed an amended complaint, it looked to the specifics of all three complaints to determine when the claim at issue was first asserted. *United States ex rel. Duxbury v. Ortho Biotech Prods.*, 579 F.3d 13, 32–34 (1st Cir. 2009).

Similarly, we and at least one other circuit have implied that an amendment might cure a first-to-file deficiency if it served to demonstrate that a relator was bringing at least one truly new claim. *E.g.*, *Carson*, 851 F.3d at 306 n.6 (rejecting the relator's argument that the district court erred by not allowing him to amend his complaint because he "made no proffer . . . of how his complaint could be amended to overcome the first-to-file bar," so "any amendment would be futile"); *United States ex rel. Carter v. Halliburton Co.* (*Carter II*), 866 F.3d 199, 210 (4th Cir. 2017) (affirming the denial of a proposed amendment because, "[r]ather than address any matters potentially relevant to the first-to-file rule, . . . the proposed amendment simply add[ed] detail to [the relator]'s damages theories"); *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 927 (D.C. Cir. 2017) (noting that, "[r]ather than amend his complaint" after "deduc[ing] that [the defendant] had used the same fraudulent billing scheme [as noted in his first qui tam action] in twenty

10

additional federal contracts," the relator "brought a second qui tam action against" the defendant).

The district court concluded otherwise, and Appellees defend that conclusion on appeal, based on an inapposite line of circuit cases. In those cases, a relator filed a False Claims Act lawsuit, which was precluded by a first-filed action; but before their case could be dismissed, the first-filed action resolved. With the first-filed action no longer pending, the relator sought to amend their complaint to note that the first-to-file bar was no longer present. But several circuits have concluded (albeit not unanimously) that, in that situation, an amendment cannot cure the complaint's original sin of having been filed while a bar existed; the relator's only recourse is to refile. *Compare Shea*, 863 F.3d at 929, 936 (concluding that "a supplemental *complaint* cannot change when [the relator] brought his . . . *action* for purposes of the statutory bar," but that "the district court did not abuse its discretion by allowing [the relator] to refile his action"), *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 172–75 (2d Cir. 2018) (similar), *and Cho v. Surgery Partners, Inc.*, 30 F.4th 1035, 1040–41 (11th Cir. 2022) (similar), *with United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015) (rejecting this approach). And, while we have not specifically addressed this question, *see Carter II*, 866 F.3d at 212 (Wynn, J, concurring), we have held that "courts must 'look at the facts as they existed when the claim was brought to determine whether an action is barred by the first-to-file bar,'" *id.* at 206 (majority opinion) (quoting *Carter I*, 710 F.3d at 183).

11

Here, however, Rosales is not seeking to rely on facts arising after the time she filed the Original Rosales Complaint.[5] Instead, she is merely arguing that she was in fact the first to file certain (allegedly) *new* claims clarified or raised in the Amended Rosales Complaint. That, we hold, she is permitted to do.

In sum, we conclude that a district court applying the False Claims Act's first-to-file rule should analyze all properly filed complaints claim-by-claim to determine which relator was the first to bring a specific claim, or to bring that claim against a particular defendant.

## IV.

Aided by our consideration of her amended complaint, Rosales argues that her claims against Amedisys NC are not barred by Byers's earlier-filed claims against Amedisys Holding (the parent corporation) because she brought claims against three additional defendants—Amedisys NC, Dr. Batish, and his practice—and added a False Claims Act claim for a violation of the Anti-Kickback Statute. Nonetheless, even with the consideration of Rosales's amended complaint, we conclude that the district court was correct to dismiss this matter based on the application of the first-to-file rule.

---

[5] The Amended Complaint does allege one fact that occurred after she filed the Original Rosales Complaint, namely, that the Government intervened in a Tennessee case in June 2021. That allegation is irrelevant for purposes of the first-to-file analysis in this case.

A.

First, regarding the addition of Amedisys NC as a defendant, the False Claims Act's first-to-file rule does not create a bright-line distinction based on the identities of the defendants. That is, there is no firm rule that claims brought against different defendants, no matter how similar the underlying facts and no matter the corporate relationship between the defendants, are permissible. Nor is there an inverse bright-line rule that claims against one entity bar claims against that entity's parent, subsidiary, or sister entity.

Instead, the statute provides that "[w]hen a person brings" a qui tam action under the statute, "no person other than the Government may intervene or *bring a related action based on the facts underlying the pending action*." 31 U.S.C. § 3730(b)(5) (emphasis added). The emphasis is on the facts at play and whether the earlier-filed lawsuit was sufficient "to promptly alert the government to the essential facts of a fraudulent scheme," not necessarily the identities of the defendants named in the complaints. *Carson*, 851 F.3d at 302 (quotation marks omitted); *accord Cho*, 30 F.4th at 1043 ("[W]e find instructive the view of our sister circuits that adding a new defendant to the mix does not *necessarily* allow a later-filed action to evade the first-to-file bar, particularly where the new defendant is a corporate relative or affiliate of the earlier-named defendants.").

Thus, courts facing this situation "must determine whether the introduction of a new defendant amounts to allegations of a 'different' or 'more far-reaching scheme' than was alleged in the earlier-filed action." *Cho*, 30 F.4th at 1043 (quoting *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015)); *accord Poteet*, 552 F.3d at 517 ("[T]he fact that the later action names different or additional defendants is not dispositive

13

as long as the two complaints identify the same general fraudulent scheme."); *cf. In re Nat. Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956, 962 (10th Cir. 2009) (concluding that the identity of the defendant *is* a relevant fact if—unlike here—the defendants are not part of "the same corporate family").

Where, as here, the corporate entities are related, "to understand whether the suits materially overlap we must know whether the initial suits alleged frauds by rogue personnel at scattered offices or instead alleged a scheme orchestrated by . . . national management." *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 364 (7th Cir. 2010). This is because "[a] belated 'relator who merely adds details to a previously exposed fraud does not help reduce fraud or return funds to the federal fisc, because once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.'" *Carson*, 851 F.3d at 302–03 (quoting *Branch Consultants*, 560 F.3d at 378).

So, if a parent company and its subsidiaries are engaging in the same fraud, a lawsuit pointing to fraud by the parent—or the parent and some subsidiaries—alerts the government to the possibility that other subsidiaries may be engaging in the same conduct. *E.g.*, *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218 (D.C. Cir. 2003) (first-to-file rule barred suit against subsidiary where prior suit had been brought against parent and alleged nationwide scheme); *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1209 (D.C. Cir. 2011) (first-to-file rule applied when first-filed complaint alleged that "corporate policies" perpetuated a "nationwide scheme attributable" to both Nevada subsidiary and parent company, and second-filed complaint

14

simply asserted same fraudulent practices nationwide and in New Jersey subsidiary); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1280 n.4 (10th Cir. 2004) (first-to-file rule barred suit even though relator "named as defendants some affiliated . . . entities that were not listed as defendants in the [earlier] suit" because "[t]his variation does not change the fact that the . . . complaints alleged the same essential claim of fraud").

By contrast, a lawsuit brought against only one geographically limited subsidiary might not alert the government to fraud being committed by a separate subsidiary. *E.g.*, *Heath*, 791 F.3d at 123 (first-to-file rule did not bar suit against parent company and nineteen subsidiaries where earlier suit related only to single subsidiary committing a specific, geographically limited fraud because, "[w]ithout more, one subsidiary's infractions do not presumptively symptomize a corporate-pervading problem"); *Cho*, 30 F.4th at 1044 ("[A] public disclosure that one of a company's subsidiaries engaged in fraud may not alert the government to a parallel, distinct scheme by another subsidiary." (citing *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 566–67 (11th Cir. 1994) (per curiam))).

This case falls under the former category. Byers's lawsuit against Amedisys Holding and Amedisys South Carolina alerted the government to the same alleged fraud that Rosales later asserted against Amedisys NC.

15

Specifically, both the Original Byers Complaint and the Amended Rosales Complaint[6] alleged that Amedisys Holding admitted and recertified patients "for hospice care who [did] not meet hospice requirements," with the medical director signing off "without having seen the patient or having reviewed the patient records," and with false "documentation of patients' conditions." J.A. 12, 20 (Original Byers Complaint); *accord* J.A. 67–68, 86, 88 (Amended Rosales Complaint). Both complaints also alleged that nurse case managers were pressured to admit patients, and that the company would "send a different nurse to admit the patient" if they refused. J.A. 21 (Original Byers Complaint); *accord* J.A. 86, 88, 92 (Amended Rosales Complaint). And, importantly, both complaints alleged that these practices were not limited to the particular locations where the relators worked, but instead were "systematic" and "wide-spread." J.A. 20 (Original Byers Complaint); *accord* J.A. 70, 86 (Amended Rosales Complaint alleging the fraud was "conducted on a regional and national scale," was "a company-wide (nationwide) phenomenon," and was "understood and encouraged from the highest corporate levels").

While Rosales's complaint was more detailed than Byers's, it put forward the same essential elements of fraud. She did not allege a North Carolina-specific scheme; to the contrary, she alleged that the fraud was *not* "limited to only North Carolina," but was "a company-wide (nationwide) phenomenon." J.A. 86. Thus, "[n]either [Rosales]'s factual additions"—including the addition of Amedisys NC as a defendant—"nor the fact that

---

[6] Rosales brought essentially the same claims in the Original Rosales Complaint, and only added further detail in her Amended Complaint. For simplicity, we cite only the Amended Complaint.

16

[her] experience took place in [North Carolina], as opposed to [Byers]'s experience in [South Carolina], saves [her] from the first-to-file bar." *Carson*, 851 F.3d at 304.

### B.

Likewise, we find no significance to the Amended Rosales Complaint's addition of claims against Dr. Batish and his medical practice. As the district court noted,[7] Dr. Batish "is a medical director, and the [Original Byers Complaint] includes allegations against Amedisys [Holding]'s medical directors," meaning the Original Byers Complaint gave "the government . . . enough information to discover the fraud in North Carolina that Rosales alleges." *Rosales*, 2024 WL 1559284, at *5. We agree.

Again, a comparison between the two complaints demonstrates that they alleged the same material elements of fraud. Both complaints alleged that Amedisys Holding's "medical director[s] often sign[ed] certifications for patient(s) without having seen the patient or having reviewed the patient records at the time of certification." J.A. 20 (Original Byers Complaint); *accord* J.A. 87–88 (Amended Rosales Complaint). Both complaints alleged that "nurse case managers were instructed not to bother the medical director with eligibility and admissions determinations." J.A. 95 (Amended Rosales Complaint); *accord* J.A. 21 (Original Byers Complaint). And both complaints alleged that these were "systematic" and "wide-spread" practices. J.A. 20 (Original Byers Complaint); *accord* J.A. 88 (Amended Rosales Complaint alleging that "Dr. Batish's practice of admitting patients

---

[7] Although the district court concluded that Rosales could not rely on her Amended Complaint, it also determined that, even if it considered the Amended Complaint, the first-to-file rule barred Rosales's claims against Dr. Batish and his practice. *Rosales*, 2024 WL 1559284, at *5–6.

to hospice without actually seeing much less examining any such patients was not unique to Dr. Batish," but "reflected a widespread practice followed by Amedisys [Holding] not only in North Carolina but nationwide"). The district court was correct to apply the first-to-file bar to Rosales's claims against Dr. Batish and his practice.

C.

Finally, the Amended Rosales Complaint added a False Claims Act claim for a violation of the Anti-Kickback Statute.[8] In rejecting Rosales's claim premised on the Anti-Kickback Statute, the district court relied solely on its conclusion that "Rosales cannot amend her complaint to defeat the first-to-file rule." *Rosales*, 2024 WL 1559284, at *6.

We disagree for the reasons explained above. But we affirm on another "ground apparent from the record before us." *Carter II*, 866 F.3d at 206. Specifically, Rosales's Opening Brief fails to argue how her Anti-Kickback Statute claim is distinct from the allegations in the Original Byers Complaint or the other complaints filed before hers, at

---

[8] Rosales gestures toward the idea that she brought a standalone claim under the Anti-Kickback Statute, rather than a False Claims Act claim predicated on a violation of the Anti-Kickback Statute. *E.g.*, Opening Br. at 2–3 (arguing that Rosales brought "a count arising under the anti-kickback statute," which "does not contain a first to file bar"). But "[w]hile the Fourth Circuit has not yet addressed the issue, other courts agree that there is no private cause of action under the Anti-Kickback Statute." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 193 n.4 (4th Cir. 2022). As Rosales makes no argument in her Opening Brief that this Court should recognize such a private cause of action, she forfeits any such argument. *See G.M. ex rel. E.P. v. Barnes*, 114 F.4th 323, 338 n.7 (4th Cir. 2024).

However, "[a] violation of [the Anti-Kickback S]tatute 'automatically constitutes a false claim under the False Claims Act.'" *Nicholson*, 42 F.4th at 194 (quoting *United States ex rel. Lutz v. Mallory*, 988 F.3d 730, 741 (4th Cir. 2021)). The actual text of Rosales's Amended Complaint appears to allege just such a claim. And at times, her Opening Brief speaks of the claim in that way. So, we address that claim.

18

least two of which alleged a kickback scheme and cited the Anti-Kickback Statute.[9] *See* Motion to Unseal at 28, 30, 50, 94, 96, *Byers*, No. 7:21-cv-03109 (D.S.C. Oct. 4, 2021), ECF No. 85. Instead, she merely points to the claim in a conclusory fashion. That is insufficient to avoid forfeiture.[10] *See G.M. ex rel. E.P. v. Barnes*, 114 F.4th 323, 338 n.7 (4th Cir. 2024) ("[A] party forfeits an argument by failing to develop it in the opening brief, even if its brief takes a passing shot at the issue." (quoting *United States v. Smith*, 75 F.4th 459, 468 (4th Cir. 2023))).

## V.

Rosales also contends that the district court erred in dismissing her claims without prejudice based on a lack of jurisdiction. But this Court has held that the first-to-file rule is jurisdictional. *Carson*, 851 F.3d at 303 ("If a court finds that the particular action before it is barred by the first-to-file rule, the court lacks subject matter jurisdiction over the later-filed matter.").

---

[9] The McGee/Monroe and Ward complaints present a potential first-to-file bar for Rosales even though they were dismissed in 2022, after she filed her Original and Amended Complaints. *See Byers*, 2022 WL 4237076, at *3–4. While "an earlier suit . . . ceases to bar [a later] suit once it is dismissed," *Kellogg Brown & Root*, 575 U.S. at 662, such a dismissal does not "*automatically* cure the . . . first-to-file defect," *Carter II*, 866 F.3d at 210 (emphasis added). Instead, a relator faced with a first-filed complaint that is later dismissed must either refile her lawsuit or—if she can persuade the court to follow the minority view in the circuit split discussed above, *see supra* at 11—at least amend her complaint to note the dismissal. *See Carter II*, 866 F.3d at 211–12 (Wynn, J., concurring) (noting that which option such a relator must pursue is an open question in this Circuit).

[10] Rosales raises other arguments, but they lack merit. She notes that she was the only relator to bring suit on behalf of North Carolina, but she does not even attempt to develop an argument as to why that matters, thus forfeiting that issue. *See G.M.*, 114 F.4th at 338 n.7. She also points to her state-law claim, but argues only that the district court had supplemental jurisdiction over that claim because it "erred in dismissing the federal claims"—an argument that we reject for the reasons discussed. Opening Br. at 19.

19

To be sure, our Court falls within a rapidly shrinking minority of circuits taking that view.[11] Indeed, the Supreme Court seemingly hinted in 2015 that the first-to-file rule is *not* jurisdictional by indicating that a dismissal under the rule can be done *with prejudice*. *Kellogg Brown & Root*, 575 U.S. at 662. Yet, after remand from the Supreme Court in that very same case, this Court declined to reconsider our precedent that the issue is jurisdictional. *Carter II*, 866 F.3d at 203 n.1. Accordingly, because we remain bound by our pronouncements on this issue in *Carson* and *Carter II*, and because Rosales failed to raise this argument below,[12] we decline to revisit the issue of jurisdiction in this matter.

## VI.

For the foregoing reasons, we affirm the decision of the district court dismissing Rosales's complaint without prejudice for lack of jurisdiction.

*AFFIRMED*

---

[11] *Compare Millenium Lab'ys.*, 923 F.3d at 251 (1st Cir.) (first-to-file rule is not jurisdictional; overruling *Wilson*, 750 F.3d at 117), *United States ex rel. Hayes v. Allstate Ins. Co.*, 853 F.3d 80, 85–86 (2d Cir. 2017) (per curiam) (same), *In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 974 F.3d 228, 232 (3d Cir. 2020) (same), *United States ex rel. Bryant v. Cmty. Health Sys., Inc.*, 24 F.4th 1024, 1036 (6th Cir. 2022) (same, overruling *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005)), *Stein v. Kaiser Found. Health Plan, Inc.*, 115 F.4th 1244, 1246 (9th Cir. 2024) (en banc) (same, overruling *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186–87 (9th Cir. 2001)), *and Heath*, 791 F.3d at 119–21 (D.C. Cir.) (same), *with Branch Consultants*, 560 F.3d at 376–77 (5th Cir.) (jurisdictional), *and Grynberg*, 390 F.3d at 1278 (10th Cir.) (same). *But see United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1246 n.3 (10th Cir. 2017) (suggesting the question is actually open in the Tenth Circuit in light of intervening Supreme Court precedent).

[12] In fact, before the district court, she affirmatively argued that the first-to-file bar *was* jurisdictional. *See* Opposition to Motion to Dismiss at 7–9, *United States ex rel. Rosales v. Amedisys N.C., LLC*, No. 7:20-cv-90 (E.D.N.C. Nov. 16, 2023), ECF No. 50.